**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NUMBER 23-162-002** |
| | **:** | |
| | **:** | |
| **ANTHONY NOLF** | **:** | |

**DEFENSE MEMORANDUM IN AID OF SENTENCING**
**<u>AND MOTION FOR DOWNWARD VARIANCE</u>**

Anthony Nolf, by and through counsel, Timothy A. Wright, Assistant Federal Defender, submits this memorandum to aid the Court in fashioning a sentence which is sufficient, but not greater than necessary, to meet the statutory objectives of 18 U.S.C. § 3553(a). January 6, 2021, will be a day this country never forgets. And it is a day that will haunt Anthony Nolf for the rest of his life. Anthony came to Washington D.C. with his family members to participate in what he thought would be a peaceful protest, like one that had taken place in December 2020. He travelled with his family to Washington, D.C. They were not part of any organized group. Anthony did not bring any weapons, did not wear any military or tactical clothing, nor did he possess any military equipment.

Unfortunately, the events of that day quickly escalated after the former president called on the assembled crowd to go with him to the Capitol. Anthony followed the thousands of other protestors and walked from the Washington Monument to the Capitol grounds. When he arrived there, the crowd had already begun removing barricades and Anthony became involved in the conduct that forever changed his life. He now stands before this Court humbled, remorseful, and deeply ashamed of his conduct.

This Court is now tasked with the heavy decision of determining what his sentence must be, weighing all the considerations encompassed in 18 U.S.C. § 3553(a), as well as those espoused in *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. The defense respectfully submits that the appropriate sentence in this case is one that incorporates a significant downward variance from the agreed upon advisory guideline range considering the arguments presented herein, and upon consideration of evidence and arguments presented during his sentencing hearing currently scheduled for March 22, 2024.

## I.     **Anthony Nolf's Personal History and Characteristics.**

Anthony was born one of two children in ████████████, under less-than-ideal circumstances. His parents divorced when he was very young, and Anthony and his sister spent their childhood alternately bouncing between two unhappy homes. After his father's second wife died of cancer, Anthony and his sister were largely left in the care of his father's girlfriend, who Anthony described as mentally abusive.[1] Anthony fared even worse at his mother's house, as she was unloving and neglectful. She would routinely leave him and his sister home alone while she spent her nights out at a bar. He felt unwanted by his mother. That feeling was harshly driven home to him when she kicked him out of the house while he was still a teenager.

Despite his difficult childhood, Anthony grew into the type of person that those who know him describe as a good neighbor, a good friend, and a hard worker. Attached as Exhibit A are letters from friends, neighbors and clients who have written to support Anthony. Each of these people speak very highly of Anthony – an indication of the kind of impression he makes on others.

---

[1] Pre-Sentence Report ("PSR") ¶ 68.

Anthony's life is driven by his commitment to his family. Attached as Exhibit B is a collection of family photos portraying this tight-knit, loving family. The loves of his life are his wife ██████, his son ████████████, his daughter ████████, and his youngest child, ████████. ████████, now an adult, is doing well. He is employed and living on his own, renting a room from a family member. ██████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████.

Anthony is a hands-on father who cares deeply for his children. He works very hard to ensure that they have everything they need, even when money when money is tight, as it often is. He started his own landscaping and snow removal business in 2009, which he continues to operate to this day. Together with ██████ working full-time in the food service industry, they were able to provide enough for their family. However, after ████████████, Anthony took on a second job as the family's expenses ballooned, ████████████████████████████ ████████.

Anthony is deeply remorseful for his actions on January 6, 2021. The effect of this case on his family is especially difficult for him to bear. Anthony has been the family's sole provider since late 2022, after ██████ suffered a significant injury to her shoulder, which required

surgery, and which put her out of work. Although she is hoping to return to her job, she has not

yet been cleared to return. Despite the many setbacks, Anthony continues to be a very loving and

involved father and has worked hard to provide his children with the stability and support he did

not have during his own childhood. The prospect of his incarceration and consequent inability to

provide for his family is devastating to him and only adds to his feelings of regret and remorse

for his actions.

Recently, another personal characteristic of Anthony Nolf has come to light. After

Anthony pleaded guilty and accepted responsibility, and in preparation for his sentencing

hearing, undersigned counsel arranged for a psychological evaluation with Dr. Marc Gramatges,

whose report is attached as Exhibit C. Anthony, who had never been diagnosed with any mental

health condition, reluctantly agreed. Most of Dr. Gramatges's findings were unsurprising.

███████████████████████████████████████████████

████████████████████████████████ ███████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

## II.    Application of the 18 U.S.C. § 3553(a) Factors Supports a Downward Variance

In sentencing Anthony, this Court must consider the sentencing factors set forth in

18 U.S.C. § 3553(a) as the touchstone in determining what sentence to impose. While the Court

must consider the guidelines, they are advisory and only a starting point. *See United States v.*

*Booker*, 543 U.S. 220, 245 (2005); *Gall v. United States*, 552 U.S. 38, 50 (2007). With the decisions of the Supreme Court in *Gall* and *Kimbrough v. United States*, 552 U.S. 85 (2007), sentencing courts have been freed from the rigid, arithmetic framework under the guidelines, and judges have discretion to consider relevant circumstances relating to an offense, and the history and characteristics of a defendant.

       *a.*  *Nature and Circumstances of the Offense.*

January 6, 2021, was a historical event Anthony never saw coming. He went to Washington, D.C. intending to peacefully protest, as he had seen others do in December 2022. Once he and his family arrived in Washington, they peacefully attended the former president's speech, and when the larger group decided to follow the former president's message to go to the Capitol, Anthony and his family followed. When they arrived at the Capitol, the situation quickly escalated. Anthony and his family members got caught up in the events, and he made the decisions and committed the offenses for which he pleaded guilty. Reflecting on that day, Anthony is eternally grateful that he did not physically hurt any of the officers involved, and that his son and his nephew were not physically injured.

There is absolutely no evidence that Anthony went to Washington, D.C. with any intent except to peacefully protest. He did not plan to hurt anyone or break the law. He did not bring any weapons or dress in provocative or combat attire. He had no communication with anyone about doing anything except attending the speech and protesting. Unlike many defendants involved in the events of that day, Anthony did not rally or recruit others. He did not take any photographs or video. He did not take any police gear as a "souvenir," and, importantly, he never boasted or bragged about his conduct on January 6 – neither in person nor on social media – as he has never been anything but ashamed of his actions that day.

The evidence shows that Anthony made a spur-of-the-moment decision to participate in this event, but it does not show that Anthony had any intent to specifically injure any police officers. His actions on January 6, 2021, are totally inconsistent with Anthony's history, personality, and character that he manifests in every other moment of his life to this point. His conduct in this case was truly aberrational.

       b.  *Personal History and Characteristics of Anthony Nolf.*

As demonstrated above, Anthony enjoys a reputation in the community for being a devoted husband, father, and community member. His actions on January 6, 2021, were completely out of character. He lives a humble, modest life and devotes his time and energy to caring for his family members, several of whom have significant needs. He has no prior contact with law enforcement, and he has been entirely compliant with the conditions of release during the pendency of this matter.

       c.  *The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.*

Any sentence this Court imposes, even with a substantial downward variance from the advisory guideline range, will reflect the seriousness of the offense, promote respect for the law, and provide just punishment. Anthony Nolf will live with the consequences of his actions on January 6, 2021, for the rest of his life. This humble man, who sought nothing in life other than to support his family, has accepted responsibility for his actions and will live with the many consequences associated with the status of one with a felony conviction.

Apart from his actions on that dreadful day, Anthony has demonstrated nothing but respect for the law. He would have turned himself in prior to his arrest if given the opportunity. He twice voluntarily met with investigators before his arrest. And when they did arrive to take him into custody, Anthony fully complied with law enforcement.

Though the last year has not been easy, Anthony has already committed himself to rehabilitation. Anthony fully complied with all conditions of release while awaiting disposition. For nearly a year, he has consistently reported, provided negative drug screens, and obeyed all conditions of release. Throughout the pendency of this case, Anthony appeared at every hearing on time, showing nothing but deference and respect for this Court. He has proven that he can be easily supervised in the community.

        d.   *The need to provide adequate deterrence to criminal conduct and to protect the public from future crimes of the defendant.*

Anthony Nolf is not a risk of committing another crime because the deterrent impact of this case has been overwhelming. He is a humble family man who has wanted nothing more than to provide for his family and their significant needs. He is not an individual with extreme political views. Unlike others, he has been consistently remorseful for his conduct. He never bragged about his actions on January 6, nor boasted about it on social media, neither before nor after his arrest. Anthony is ashamed of his conduct on January 6, 2021. He is embarrassed. And he has no intention of allowing himself to be involved with violence or unrest ever again. As noted in the U.S. Probation Department Sentencing Recommendation, Anthony has (unlike other January 6th defendants) taken responsibility for his actions, and during his presentence interview was apologetic and expressed remorse about his actions. In short, his arrest, prosecution, and conviction thus far have sufficed to deter him from violating the law in any capacity in the future.

        e.   *The need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

This statutory objective simply does not apply to Anthony. While he would take advantage of any opportunities available to him, he operates his own business, has no substance

abuse issues, and has no personal unaddressed medical issues that cannot be better addressed outside of a custodial setting.

> f.  *The kinds of sentences available.*

There is no mandatory sentence in this case. As such, there are no constraints on imposing a sentencing incorporating a downward variance. The Court is required to exercise its broad discretion in assessing all of the 18 U.S.C. § 3553(a) factors to determine if a variant sentence is necessary to accomplish the goals of sentencing. The parsimony clause requires a sentence that is sufficient but not greater than necessary to meet these statutory considerations. All of the statutory factors mitigate in favor of a downward variance from the agreed upon Guidelines.

> g.  *The need to avoid unwarranted sentence disparities among defendants with*
> *similar records who have been found guilty of similar conduct.*

The United States Probation Officer calculates Anthony's offense level in the instant case to be 11.[2] This calculation comports with the agreed-upon Guidelines calculation of the plea agreement in this matter. Without further modification, and given Anthony's criminal history category of I, this would result in an advisory guideline range of 8 to 14 months' incarceration. Imposition of such a lengthy sentence would result in Anthony receiving a longer sentence than other defendants convicted for the same offense but accused of more egregious and violent conduct.

*United States v. Bernard Sirr*, 22-cr-259-TNM-1, and *United States v. Luke Lints*, 22-cr-259-TNM-2, are examples of individuals similarly situated to Anthony. Each had an identical 8

---

[2] *See* PSR at ¶¶ 51–59.

to 14-months agreed-to Guideline range following their pleas to 18 U.S.C. § 231(a)(3). Each received sentences well below that range.

Sirr was a member of his local Proud Boys chapter who drove to Washington D.C. with his fellow extremists. Prior to January 6th, Sirr posted several threatening tweets alluding to violence against members of the government, and on January 6th, he was at the front of a group of rioters in the tunnel engaging in a series of "heave-ho" thrusts pushing against police officers who were guarding the Capitol. Sirr was eventually repelled; however, he remained on the grounds and videoed the attack on an officer before attempting to enter the tunnel for the second time. Sirr admitted to the FBI that he attended the rally and tried to enter the Capitol, but lied about his intentions that day and fabricated his reasoning for attempting to enter the tunnel a second time. Judge Trevor N. McFadden sentenced Sirr to two months of incarceration and 12 months of supervised release.

Lints attended the "Stop the Steal" Rally with his mother, after which the two made their way to the Capitol. On the way, Lints's mother fell ill and was taken to the hospital via ambulance. Instead of accompanying his mother to the hospital, Lints continued his march on the Capitol, entered the restricted grounds and made his way onto the Lower West Terrace. Lints was in the same tunnel as Sirr and similarly made his way to the front of the rioters. There, Lints stole a police shield from officers and proceeded to use it in a coordinated "heave-ho" push against the officers. He stole a second and third shield, and continued to use police gear against the officers until he was forced from the tunnel. After January 6th, Lints was unremorseful, posting falsehoods on social media, minimizing his conduct, and calling the police the aggressors. Judge Trevor N. McFadden sentenced Lints to 4 months of incarceration, 4 months of home detention, followed by 36 months of supervised release.

Similarly, In *United States v. Stephanie Hazelton*, 21-CR-00030-JDB, Hazelton entered the Lower West Terrace Tunnel three times, all the while leading and urging other rioters forward and pushing forward against police officers. Hazelton pushed towards the front of the crowd and confronted the officers as they were assaulted with poles and batons. She was inside the tunnel as the first coordinated "heave-ho" pushing effort began. In the days following January 6, Hazelton took to Facebook Messenger to boast about her conduct at the Capitol and state her intent to do it again. In subsequent messages, she told of erasing content of the events from her phone. Hazelton had an identical 8 to 14-months Guideline range following her plea to 18 U.S.C. § 231(a)(3). Judge John D. Bates sentenced Hazelton to 10 days of incarceration and 24 months of supervised release. Like Anthony, Hazelton entered the tunnel and participated in the "heave-ho'' efforts. However, unlike Anthony, Hazelton joined the effort on three separate occasions. Also unlike Anthony, she urged others forward and called for more men to join the push. And unlike Anthony, rather than feel ashamed of her conduct, she took to Facebook Messenger to boast about her conduct.

In *United States v. Larry Giberson*, 23-CR-00115-CJN, Giberson was at the front of the pack of rioters as they began the first coordinated "heave-ho" pushing effort against police officers guarding the entrance into the Capitol. Giberson was pushed back to the tunnel entryway where he called for more rioters to join the effort before re-joining the 'heave-ho" again himself. Later in the day, after he saw an officer dragged from the tunnel by rioters, Giberson chanted "Drag them out! Drag them out! Drag them out!" and cheered as the crowd assaulted officers with weapons and pepper spray. The U.S. Probation Office calculated Giberson's guidelines identical to Anthony's following his plea to 18 U.S.C. § 231(a)(3). Judge Carl J. Nichols sentenced him to 2 months of incarceration, 6 months of home detention, and 6 months of

supervised release. Like Anthony, Giberson entered the tunnel and participated in the "heave ho'' efforts. However, unlike Anthony, after being pushed back, Giberson re-joined the effort and urged others to join. And unlike Anthony, after leaving the tunnel and witnessing an officer dragged from the tunnel, Giberson exuberantly called for more of the same.

Lastly, and most similar, is *United States v. Heather Kepley*, 1:23-cr-00162-BAH-1. Co-defendant Kepley engaged in virtually identical conduct on January 6, 2021. Where their conduct differs most is what occurred post-offense. Anthony has accepted responsibility, is apologetic and has expressed remorse for his actions and his participation in the events at the Capitol on January 6, 2021. He did not boast of his participation that day on social media, nor anywhere else for that matter. He is deeply ashamed and embarrassed and seeks to make amends and resume his life as a law-abiding husband, father, community member and citizen.

> h.  *The need to provide restitution to any victims of the offense.*

Anthony understands the government's request for this restitution and embraces the opportunity to make amends in this way.

## III.   <u>Conclusion.</u>

Careful consideration of all 18 U.S.C. § 3553(a) factors, not simply Anthony's conduct on January 6, 2021, supports a significant downward variance. Anthony did not go to Washington, D.C., planning to engage in criminal conduct. He brought no weapons, wore no tactical or combat gear, and did not incite others to engage in this conduct. Anthony immediately regretted his conduct and has never bragged or boasted about it. He does not harbor extreme political views and has never been associated with an extremist group. Anthony is a humble man of modest means who wants nothing more than to support his family through trying times. As such, a sentence incorporating a substantial downward variance is appropriate to individually

sentence Anthony to a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Respectfully submitted,

*/s/ Timothy A. Wright*
TIMOTHY A. WRIGHT
Assistant Federal Defender

## <u>CERTIFICATE OF SERVICE</u>

I, Timothy A. Wright, Assistant Federal Defender, Federal Community Defender  Office for the Eastern District of Pennsylvania, hereby certify that I caused a copy of the Defendant's Sentencing Memorandum and Motion for Downward Variance to be filed and served via electronic mail upon Michael Barclay, Assistant United States Attorney, at his email address, michael.barclay@usdoj.gov.


*/s/ Timothy A. Wright*
TIMOTHY A. WRIGHT
Assistant Federal Defender

DATE: March 15, 2024